Good morning, Your Honor. It's Michael Powell on behalf of Mrs. Cottey. I'd like to start with a statement by Judge McKibben at the first hearing when we asked him to correct his restitution order by adding the limiting language that the parties agreed to. What the judge said on page 40 of the excerpt of the record, I can't imagine a circumstance where a tax court or any court would say that a party owes $33,000 because that was a restitution order from a court. I'm sorry. Could you keep your voice up? Yes, Your Honor. I'm having trouble hearing you. I can't imagine, Judge McKibben says, a circumstance where any tax court or any court would say that a party owes $33,000 because that was a restitution order from a court. That didn't adjudicate the issue at all, but simply accepted the party's representations that at that point in time they believed it was $33,000 subject to the verification of the IRS of the amount. Then the court goes on to say, and I wouldn't hesitate a moment to enter this order if I thought I could legally. Now, so I guess what we're here today is to ask the Court to explain to Judge McKibben he in fact does have the legal authority to amend his original restitution order to reflect the agreement of the parties that that was an estimated amount of taxes and it was subject to whether or not she actually had any tax liability. When we first moved the Court to do this, we asked the Court to do it under Rule 136, that in fact it was a clerical mistake to have left that limiting language out of its restitution order. And I have to comment, I don't think Judge McKibben understands that when he enters an order, especially a restitution in a criminal case, that's a judgment against the defendant that the defendant must pay at some point if they have the funds. Well, then it's not a clerical order. Well, it's a clerical error, Your Honor, to – well, it's a clerical error. It's a clerical error for him not to limit that language. Well, that's not a clerical error. The Court made an error. It's not every – when the Court makes an error, which courts occasionally do, even this Court could make an error conceivably in theory, if not in practice, but then it's an error by the Court. It's an error by – a clerical error is when the clerk fails to enter the order that the Court stated. Well, Your Honor, as I understand it, the Court himself said that he understood that to be the intent of his order. Now, if he doesn't specifically instruct – I mean, he can only – or he can – the clerk can only write down what he orders. And the understanding of it was, and maybe this goes back to the idea that the oral pronouncement over this controls the written order, but that's exactly what Judge McKibben said. So the reason we say it's a clerical error, because the language limiting the amount of liability in that order was not included. So even if the Court doesn't agree and Judge McKibben didn't think that that was a clerical error, he denied our motion without prejudice, and we came back and pointed out that he, in fact, had jurisdiction under the Oral Writs Act under the writ of Claudia Kareli. And I think that particular common law writ fits in this particular case, because what that writ says is that at the time of judgment it was correct, but facts that happened subsequent to that turned out to either be a discharge or the judgment or some defense to that particular judgment, which is exactly what the agreement of the parties was, that there would be restitution subject to somebody determining what the actual tax liability was on the gaming license. Well, that determination was never made by the IRS. In fact, Ms. Cotty, once she was out of prison, and I will just point out, she was still in custody when she came into an inheritance, and she was required to pay that money out of that inheritance to satisfy the restitution order under the act. Kennedy, did anyone ever go to the IRS to ask them for a ruling of any kind? Well, she, in fact, did, Your Honor. She did two things. First, she amended her tax returns for the pertinent years, which was 97, 98, 99, and she showed her gaming losses versus her gaming winnings, and she got documentation back from the IRS, which is included in the RAs, and we submitted those as exhibits to the court, which nobody challenged in terms of authenticity or anything else. No counter evidence was put up. No IRS person testified at the hearing that she did, in fact, have a gaming liability. So what we have is for the years 97, 98, and 99, she had no tax liability. That's a document from the IRS. She agreed in the plea agreement to the restitution amount? No, Your Honor. What she said was, what the agreement was, that the restitution, the $33,512 was a 20 percent estimated tax under the guidelines. That was driving the guideline. Doesn't the plea agreement refer to it as a stipulated amount? Yes, Your Honor. For the purposes of the guideline, exactly, is what they stipulated that to, that the estimated tax loss was that amount for the 10-level increase in the guideline. But the plea agreement went on that neither party is bound by that number, that the actual tax liability will be worked out at a point in the future. And has that happened? Well, as far as I know, it has, Your Honor, because she has applied to the IRS. She amended the tax returns for those years. She got those documentation that's in the record that says she has zero tax liability for those years based on the gaming impact. Has the service ruled on that? The service has never ruled on that, Your Honor. Well, what happened the first time she went in after this was accomplished, she asked the IRS for a refund of the money. And the IRS says, no, we don't have to because it's an order. We understand all of that. I've got a hypothetical question for you. Suppose that the criminal case is an assault, or perhaps a better example, driving while intoxicated, and there's a victim who's injured, and the defendant in the criminal case pleads guilty, stipulates to a restitution amount. The victim goes to civil court in front of a jury and gets less than the restitution amount. Does that entitle the defendant in my hypothetical case to come back to district court or the trial court and say, I need my restitution amount reduced because we went to trial and the actual damage to this victim is less? Well, I think if the original clear agreement, when he pled guilty, says that we will determine the amount up to a certain amount, then, yes. Where in the plea agreement does it bind the court to reduce the amount of restitution in the event tax liability is less than $33,000? Well, the court acknowledged they didn't understand that that was a nominal estimated amount and that it would that that.  Yes, sir. Is there anything in the plea agreement that suggests that the court is bound to reduce the restitution amount in the event that the IRS should ever determine that the actual loss to the Internal Revenue Service is less than $33,000? No, Your Honor, but that's what a writ of Aldita Carrello is for, it's an acquittal. Doesn't that writ assume that something has happened that puts the action of the court earlier in question? Yes, Your Honor. Okay. Has what has happened? What has happened is that she's been to the IRS four times, has the IRS done anything about this amount? Nothing. It hasn't happened. No. They're just keeping the money. So they come back and say you're entitled to $10, or they come back and say you're not entitled to a refund. She can contest that, can't she? She can't, Your Honor. Your Honor, because not until the judge corrects this order. Once that order is there, there is no correction. Stipulation, the plea agreement makes clear this is an agreed-upon amount and that your client is free to pursue any remedy she wants with the Internal Revenue Service, correct? Yes, Your Honor, but the point was that she didn't stipulate to that amount as restitution. She stipulated that amount as the estimated tax liability. And that's it, Your Honor. And was there anything wrong with the Court using that figure as the restitution amount? Well, I mean, technically, no, because under 3663b3, the parties can, and what that particular statute says, the Court can impose a restitution order in any criminal case to the extent that the parties agree to it. Did you object to the use of that figure as a restitution amount? Well, because the extent that the parties agreed to it, Your Honor. The answer to my question is no, isn't it? Do we not do we object to the actual amount? You didn't object to Judge McKibben setting the restitution amount in the amount your client had agreed to for sentencing purposes. On the proviso that the actual amount, that was the upper limit of it, and the actual amount would be determined by the IRS once the the order. Counsel, can I just ask you one quick question, because we've helped you use your time? But the procedural devices that you're using here are devices, the writ and the rule, are devices that are designed to take into account things that were unknown, that happened after, as Judge Hawkins has suggested. Now, as I understand it, and to straighten you out, as I understand it, your client was gambling on a false Social Security number. Correct, Your Honor. And she must have known that she'd lost a lot of money on that Social Security number, as well as having made some. So I just don't quite understand how that your theory of the need for change fits the procedural devices that you're using here. Well, Your Honor, she may well have known it, but I don't think a lot of people that gamble at that particular level. We're talking $169,000 that she won, but she lost more than that. I don't think people that pay that much attention to it. I really don't. And she, you know, since she wasn't getting a tax bill, why would she? I mean, in that particular case. But that's why, you know, that's why the casinos have done these player cards, because there's a record. I have one quick question. Didn't Judge McKibben tell you that you should go and get a ruling from the IRS and then come back? We did. The second ruling was that they don't have to give the money back because she paid the restitution to get out of prison early. That's what the IRS told her in their second denial, which, number one, is true, because she, in fact, spent six or seven more months in the correctional facility than she was actually sentenced to, because when they sent her out to the community correctional center, she couldn't leave the place because of medical issues. So she was in custody when it happened. So the second ruling was, IRS says, you got it because you got out of we're not giving her back because you paid to get out of prison early. And that's what Judge McKibben said in another way. In his word, he says, well, she got off supervised release early because she paid the money. That doesn't make any sense at all. I mean, the money was paid by operational law. Okay. Thank you. You've more than used your time. Good morning. May it please the Court. Elizabeth Olson on behalf of the United States. Ms. Cotty. You were also an assistant United States attorney, were you not? Yes. U.S. Attorney's Office in Reno. Ms. Cotty has the burden of showing that she's entitled to relief. And in this case, she hasn't met that burden. There's two ways she hasn't met that burden. She hasn't met the legal requirements for relief. And she also hasn't established the factual fact that she's entitled to relief. Her entire claim rests on an assumption that these IRS declaration letters that she had no tax liability for the three years in question. But we don't know what she submitted to the IRS. Presumably, she filed some kind of tax return, but Judge McKibben didn't have those tax returns. So there's no way for me or for the district court to assess whether what she filed with the IRS was complete or accurate. Now, she says in the defense brief at 14, she says that the IRS determination letters were based on, quote, complete winnings and losses recorded by the casinos. But the citation for that assertion is pages 64 to 71 in the excerpt of record, which are the documents from three casinos that she submitted to the district court with her motion to correct. Those documents, 64 to 71, are unquestionably incomplete because there's nothing in those documents that acknowledge the jackpots that she won at the Silver Club, at Harvey's, or at Caesars in the factual basis for her plea agreement. She acknowledged that she won thousands, possibly tens of thousands of dollars at those casinos, as well as the three for which she has submitted documentation. And just not to get too far into the weeds on this factual stuff, but just one point that I would make, because we don't have the full records of what she submitted to the IRS, the one thing that we do know is that the IRS determination letter with respect to 1999, and that's at page 75 of the excerpt of record, records that based on the documents that she submitted to them, she had an adjusted gross income of $75,023. Now, that is precisely the dollar amount that's recorded in her gross jackpots from the El Dorado Casino in 1999 at excerpt of record 69. Let me see if I remember my tax law from 30 years ago. My understanding is if you contest a tax but don't pay it, you go to the tax court. If you pay it, you can file in the district where you filed your return. I believe that that is correct. Now, assuming there are not statute of limitations problems, can she file in Nevada? Yes. Well, actually, I don't know if it would be Nevada or California, because I'm not sure. I believe she would be in Reno. Assuming there are no statute of limitations problems, she can go to the United States district court and contest the action of the IRS in denying her a refund, correct? Yes. And that is what Judge McKibben said that she should do. And just to answer your question about the statute of limitations, at excerpt of record 11, that's the letter from the IRS denying her appeal. I don't know if it was denying the initial one or denying the appeal, but what they say in that letter, which is dated November 29, 2007, is that she has two years from the date of that letter to file a civil claim in district court, in U.S. district court. So according to that letter, and I don't know very much about tax law either, but I believe she has until November 29th of this year to file that suit, assuming that that's two years from the time that her claim was denied. And Judge McKibben made clear on the record that if that happens and if the IRS determines that she is entitled to a refund and the loss to the service is less than the $33,000, he would entertain a motion? Yes. I'm not sure what kind of motion that would be. I mean, what he said is, he said, take this transcript. He said, it was not my intention that the IRS get a $33,000 windfall. It was my intention that the IRS would be made whole in restitution. And so if the IRS determines that you don't have any tax liability, it would be completely unreasonable to me that they would say, well, it's okay because we have this order signed by a judge saying we get restitution of $33,500. And what he said is, take the transcript of this hearing where I'm saying on the And, you know, and when you file your civil suit or when you do your appeal, make sure that that's clear. You know, if she files a suit in U.S. District Court, like I say, maybe it'll be Reno. Maybe it'll be assigned to Judge McKibben. If so, she'll probably have an easier time of it than, you know, in front of another judge. They'll look at what Judge McKibben said and they'll decide, you know, they'll decide what she is, what she's due. I think that the fact that we don't know, I mean, this assumption and the IRS has not endorsed the assumption that these declaration letters from them, based on the documents that she submitted to them, you know, established that she had no tax liability. That chapter in this story has yet to be written. Has yet to be written, yes. On the legal side, you know, the as I explained in my brief, I believe that this is really a petition for a writ of quorum, no, but it's not Adida Corella, because what they're saying is the judge should not have ordered $33,500. I mean, there was a mistake. They're claiming that there was a mistake at the time that they didn't realize until later. The requirements for quorum nobis, and there — I couldn't find a case that gave the requirements for Adida Corella. This Court has never granted a writ of Adida Corella, and so, you know, I would only assume that they're the same as for quorum nobis. But one of them is that you have to — that the petitioner has to give valid reasons for not attacking this earlier. And the fact is, she didn't. She waited — she did nothing for three and a half years, even if we assume that the district court intended her to go to the IRS and figure out what she really owed, which we don't really know, because the sentencing — the transcript of the initial sentencing hearing wasn't included in the defendant's excerpts. And I don't know if they tried to get it and it was just too old or what, but, you know, but they have the burden to bring this forward. And, you know, she did nothing for three and a half years. Sotomayor, in fairness, didn't she inherit some money, so she actually paid? Yes. So you're able to pay the $30,000. No. And that — but that's actually a very good point, which is, you know, Judge McKibben, even if he intended for her to have the ability to go work this out, he probably didn't intend for her to have the ability to wait forever to do that. I mean, she did nothing for three and a half years. She had paid a sum total of $96 towards her restitution in that three and a half  She was in custody. She was — she was in a halfway house. She got 21 months. I'm not sure how much she spent in a — in a full facility, but then she was in a halfway house for quite some time after that in, I believe, in Reno. And in — and for part of that, she was ill, right? She — I know that she had some medical — I don't know. There's something in the record about some medical problems that she had. But, you know, but in any event, it wasn't until after she did come into some money in the IRS — I mean, there's this restitution order, and they took it to satisfy the restitution order. And at that point, you know, all of a sudden, now she wants to go to the IRS and try to figure out what she really owes. I mean, she had three and a half years, and she has a burden here of explaining, you know, valid reasons for not addressing this issue sooner. Judge McKibben said that she should first — actually, the — he says that the government suggested that she should first apply for a refund. Yes. Has that been done? Yes. And what happened? She — the IRS denied her — her — her request. The IRS was told that that was not Judge McKibben's intent, that she paid taxes that she didn't owe, and the IRS said, even if she didn't owe them, we won't give her a refund? The process — first she applied for a refund, and it was denied. Then she filed the motion with Judge McKibben. They had this hearing. Judge McKibben said, you know, you can file this. Apparently, you already have. You can appeal it. The appeal was — she had appealed it. The appeal was in process when she filed the motion in the district court. Judge said, take this transcript, send it to the IRS so that they know what I had in mind. She did that, and they — and the IRS denied — denied her claim again. And they did in this goofy order, which is — which is incorrect. I mean, they did — the order says, because she paid the restitution to get out of jail earlier. And that's just not true. I don't know where the IRS got that information. She did — she did, you know, after she had applied for the refund, she asked the court to terminate — early termination of supervised release. And as one of the explanations for why she should have that terminated, she said, she'd already served one year of supervised release, and she had paid her restitution in full. She didn't acknowledge to the district court that she was, at that moment, trying to get that money back. So, you know, but — What was the date of this? The date of — This discussion in the district court. The hearing in the district court was in July — Is that November — November 2008? No. It was — it was July of 2007, I believe, was the hearing in the district court, July 10th of 2007. And then she — and then she took that, she filed that with the IRS, and she got this — she got this second rejection, or second or third rejection from the IRS. The next step for her is to file a claim in the district court. I see my time is up. Do you have questions? Thank you. If there are no further questions. Are there any further questions of Mr. Powell? Thank you. The case just argued is submitted for decision.
judges: Schroeder, Reinhardt, Hawkins